Naikang Tsao (CA Bar No. 164180)
FOLEY & LARDNER LLP
150 East Gilman Street
Madison, WI 53703
608-258-4250 (t)
608-258-4258 (f)
ntsao@foley.com

Ashley M. Koley (CA Bar No. 334723)
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
213-972-4535 (t)
213-486-0065 (f)
akoley@foley.com

*Attorney for Plaintiffs Sub-Zero, Inc.
and Wolf Appliance, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUB-ZERO, INC. and WOLF APPLIANCE, INC., | Case No. 2:18-cv-428-JFW-MAR |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO STAY ENFORCEMENT OF FEBRUARY 21, 2025 ORDER AND STATEMENT OF DECISION PENDING APPEAL** |
| v. | |
| HENRY WASSERMAN, | |
| Defendant. | |

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-cv-428-JFW-MAR

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.    *EX PARTE* RELIEF IS IMPROPER. ............................................................ 2

II.   WASSERMAN'S NOTICE OF APPEAL DID NOT DIVEST THE COURT OF JURISDICTION OVER THE CONTEMPT PROCEEDING AGAINST HIM ................... 3

      A.    Legal Standard ............................................................................ 3

      B.    Because The 2025 Order Is A Non-Appealable Interlocutory Order, Wasserman's Notice Of Appeal Is Premature. ....................................... 4

III.  WASSERMAN'S REQUEST TO STAY ENFORCEMENT OF THE 2025 ORDER AND THIS CONTEMPT PROCEEDING PENDING APPEAL SHOULD BE DENIED. ............. 7

      A.    Likelihood Of Success ................................................................. 7

      B.    Irreparable Harm ........................................................................ 8

      C.    Balance Of Harms ..................................................................... 10

      D.    Public Interest .......................................................................... 11

IV.   IN ANY EVENT, WASSERMAN CANNOT OBTAIN STAY THE ENFORCEMENT OF THE 2025 ORDER WITHOUT POSTING A $3,165,000 BOND. ...................... 12

CONCLUSION ................................................................................................. 16

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

# TABLE OF AUTHORITIES

**Federal Cases**

*Cobbledick v. United States,*
  309 U.S. 323 (1940)...............................................................................7

*Chesser v. Walton,*
  2017 U.S. Dist. LEXIS 91839 (S.D. Ill. June 14, 2017)..............................3

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*
  321 F.3d 878 (9th Cir. 2003) .................................................................15

*Edmond v. City of Los Angeles,*
  2022 WL 20273277 (C.D. Cal. Jan. 13, 2022).........................................3

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
  636 F.2d 755 (D.C. Cir. 1980)................................................................13

*Garraway v. Ciufo,*
  113 F.4th 1210 (9th Cir. 2024) ...............................................................5

*Hunt v. Check Recovery Sys.,*
  2008 WL 2468473 (N.D. Cal. June 17, 2008)...........................................9

*In re Marino,*
  949 F.3d 483 (9th Cir. 2020) ..................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.,*
  2020 WL 13654300 (N.D. Cal. June 18, 2020) ........................................9

*Kennedy v. Applause, Inc.,*
  90 F.3d 1477 (9th Cir. 1996) ..............................................................5, 6

*Ketab Corp. v. Mesriani Law Grp.,*
  2016 WL 5921932 (C.D. Cal. Feb. 1, 2016) ...........................................13

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,*
  539 F.3d 1039 (9th Cir. 2008) .................................................................7

*Leibel v. City of Buckeye,*
  382 F. Supp. 3d 909 (D. Ariz. 2019) .......................................................3

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

*Mercedes-Benz Group AG v. A-Z Wheels LLC*,
  2022 WL 2276907 (S.D. Cal. June 23, 2022) ....................................11

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017).............................................................................4

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995)....................................................2

*Monaco v. Bear Stearns Cos., Inc.*,
  2012 WL 12506860 (C.D. Cal. Dec. 5, 2012)....................................9

*Nascimento v. Dummer*,
  508 F.3d 905 (9th Cir. 2007) .........................................................3, 4

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001) ...........................................................3

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  81 F.4th 843 (9th Cir. 2023) ..............................................................4

*Prout v. U.S. E.E.O.C.*,
  2024 WL 3418170 (S.D. Cal. July 15, 2024)......................................3

*Rivas v. Knight Transp. Inc.*,
  2017 WL 3457113 (C.D. Cal. Feb. 28, 2017) .............................12, 15

*Ruby v. Sec'y of U.S. Navy*,
  365 F.2d 385 (9th Cir. 1966) .........................................................3, 4

*Rum v. HCA Healthcare, Inc.*,
  2023 WL 7107268 (C.D. Cal. Oct. 11, 2023) ...................................10

*Save Our Sonoran, Inc. v. Flowers*,
  227 F. Supp. 2d 1111 (D. Ariz. 2002) .............................................15

*Save Our Sonoran, Inc. v. Flowers*,
  408 F.3d 1113 (9th Cir. 2005) .........................................................15

*Sportmart, Inc. v. Wolverine World Wide, Inc.*,
  601 F.2d 313 (7th Cir. 1979) .............................................................4

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

*United States v. Allahyari*,
    99 F.4th 486 (9th Cir. 2024) ....................................................................... 6

*United States v. Biden*,
    2024 WL 2739320 (C.D. Cal. May 9, 2024) ............................................. 3

*Walczak v. ELP Prolong, Inc.*,
    198 F.3d 725 (9th Cir. 1999) ................................................................... 15

*Weingarten Realty Invs. v. Miller*,
    661 F.3d 904 (5th Cir. 2011) ..................................................................... 9

**Federal Statutes**

28 U.S.C. § 1291 .............................................................................................. 4

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

Plaintiffs Sub-Zero, Inc. and Wolf Appliance, Inc. (together, "Sub-Zero") file this opposition to defendant Henry Wasserman's ("Wasserman's") *ex parte* application to stay enforcement of the February 21, 2025 Order and Statement of Decision (together, "2025 Order," Docket Nos. 74, 75) and this contempt proceeding pending appeal. For the reasons stated below, Wasserman's *ex parte* application should be denied.

## INTRODUCTION

Having defrauded countless Sub-Zero customers by impersonating Sub-Zero and its Factory Certified Service providers (including Box Appliance), and having been ordered in both the February 1, 2019 Order and Consent Judgment ("2019 Order," Docket. No. 32) and the 2025 Order to stop using infringing domain names and websites, Wasserman continues to thumb his nose at the Court's Orders.

On April 4, 2025, Sub-Zero informed Wasserman that it intended to file a second contempt motion based on Wasserman's non-compliance with the 2019 and 2025 Orders (Docket No. 94) and, rather than simply comply with those Orders, Wasserman:

> (a)  filed a notice of appeal regarding the 2025 Order on April 11, 2025 (Docket No. 96), and
>
> (b)  now has filed an *ex parte* application over the Easter weekend to stay enforcement of the 2025 Order pending appeal and this contempt proceeding.

Taken together, these actions seek to put this case on ice, *i.e.*, to prevent the Court from taking further steps to prevent Wasserman's ongoing fraudulent activities for more than a year, at no cost to Wasserman.

As explained below, because the Court's contempt proceeding against Wasserman is ongoing and is not final, the fact that Wasserman filed a notice of appeal does not divest the Court of jurisdiction to oversee the contempt proceeding,

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

1  including deciding Sub-Zero's second contempt motion (Docket No. 98). Moreover,

2  Wasserman's *ex parte* application to stay enforcement of the 2025 Order and the

3  contempt proceeding should be denied.

**ARGUMENT**

4

5  **I.    *EX PARTE* RELIEF IS IMPROPER.**[1]

6      Wasserman cannot meet the *Mission Power* standard for *ex parte* relief.

7  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

8      First, Wasserman's *ex parte* application could have been calendared in a

9  regular manner. The 2025 Order was entered almost two months ago, on February

10  21, 2025 (Docket Nos. 74, 75), and the Court's Order and Statement of Decision

11  denying Wasserman's motion for reconsideration was entered over three weeks ago,

12  on March 27, 2025 (Docket Nos. 91, 92). Wasserman could have filed a notice of

13  appeal at any time after that date. Given the amount of time that has passed since the

14  Court's Orders were issued, Wasserman never explains what *emergency* now justifies

15  *ex parte* relief, because there is none.

16      Second, Wasserman has not established that he would be prejudiced if his stay

17  request were heard as a regularly noticed motion.

18      Third, for these reasons, Wasserman caused the "crisis" that results in Sub-

19  Zero's counsel and the Court having to work over the Easter weekend.

20      Wasserman contends that he needed urgent relief because the Court no longer

21  has jurisdiction and he needed a stay ruling before Monday when his Opposition to

22  Sub-Zero's pending contempt motion is due. Wasserman is wrong on both counts.

23  As discussed below, the Court was not divested of jurisdiction over the live contempt

24  proceedings against Wasserman. And, none of the cases that Wasserman cites

25  _____

26  [1] Sub-Zero requested Wasserman to refrain from employing the *ex parte* procedure
   in an April 17, 2025 email and again during the parties' meet and confer on April 18,
27  2025, *see* Docket No. 105 at 2 (¶¶ 3, 5), and Wasserman rejected Sub-Zero's request.

28

- 2 -

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

support the proposition that an upcoming briefing deadline warrants *ex parte* relief. In *Chesser v. Walton*, 2017 U.S. Dist. LEXIS 91839, at *1 (S.D. Ill. June 14, 2017), the court granted an *ex-parte* application to extend the time to appeal a decision. That is not the circumstance here. Nor is there an imminent trial date, as was the situation in *Edmond v. City of Los Angeles*, 2022 WL 20273277, at *1 (C.D. Cal. Jan. 13, 2022). Wasserman's *ex parte* application should be denied on these grounds alone.

## II. WASSERMAN'S NOTICE OF APPEAL DID NOT DIVEST THE COURT OF JURISDICTION OVER THE CONTEMPT PROCEEDING AGAINST HIM.

### A. Legal Standard

Generally, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). However, when it is "clear to the district court" that such a notice is deficient "by reason of . . . reference to a non-appealable order," the court "may disregard the purported notice . . . and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966).

*Prout v. U.S. E.E.O.C.*, 2024 WL 3418170, at *2 (S.D. Cal. July 15, 2024); *see also Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007) ("When a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply."); *United States v. Biden*, 2024 WL 2739320, at *1 (C.D. Cal. May 9, 2024) (citing *Nascimento* and *Ruby*); *Leibel v. City of Buckeye*, 382 F. Supp. 3d 909, 916 (D. Ariz. 2019) ("A

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

premature notice of appeal does not divest a district court of jurisdiction.") (citations omitted).

### B. Because The 2025 Order Is A Non-Appealable Interlocutory Order, Wasserman's Notice Of Appeal Is Premature.

Because the 2025 Order is a non-appealable interlocutory order, Wasserman's notice of appeal did not divest the Court of jurisdiction to continue to decide issues in this ongoing contempt proceeding. *Ruby*, 365 F.2d at 389; *Nascimento*, 508 F.3d at 908.

The court of appeals "have jurisdiction of appeals from all final decisions district court of the United States." 28 U.S.C. § 1291. As the Supreme Court has stated, "[f]rom the very foundation of our judicial system, the general rule has been that the whole case and *every matter in controversy in it must be decided in a single appeal*."[2] *Microsoft Corp. v. Baker*, 582 U.S. 23, 36 (2017) (simplified). "Repeatedly [the Supreme Court] ha[s] resisted efforts to stretch § 1291 to permit appeals of right that would erode the finality principle and disserve its objectives." *Id*.

"[M]ost post-judgment orders are final decisions within the ambit of 28 U.S.C. § 1291 as long as the district court *has completely disposed of the underlying matter*." *Oracle USA, Inc. v. Rimini Street, Inc.*, 81 F.4th 843, 857 (9th Cir. 2023) (simplified, citations omitted). Thus, in *Oracle*, where the district court denied a motion for civil contempt, "the denial is final and reviewable because no further district court action is necessary to give life to the denial." *Id.* (citation omitted); *see also Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316 (7th Cir. 1979) (same).

By contrast, in this case, the 2025 Order does not "completely dispose[] of the" contempt proceeding and "further district court action *is* necessary to give life to" the 2025 Order. *Oracle*, 81 F.4th at 857.

---

[2] All emphasis in this brief is added unless otherwise noted.

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

1    For example, whether Wasserman is assessed a "fine" under the 2025 Order
2    *depends on* whether he has complied with the 2019 Order by a certain date (Docket
3    No. 75 at 12, 14), which is an issue that is *contested* and has *yet to be decided*. *See*
4    Docket No. 81 at 2 (¶ 3) (Wasserman stating: "I do not currently own or control any
5    domain names or websites that include 'Sub-Zero,' 'Wolf,' 'Box Appliance,' or
6    'Seasonal Comfort.'"); Docket No. 94 at 8 (Wasserman characterizing Sub-Zero's
7    arguments about non-compliance as "unsupported conspiracy theories"); Docket No.
8    99 at 6-14 (Sub-Zero discussing examples of Wasserman's non-compliance).
9    Because it is an *open question* whether Wasserman has violated the provision in the
10   2025 Order that would trigger the imposition of a fine, there is nothing related to that
11   issue for the Ninth Circuit to review now.

12   Likewise, the Court's assessment of a compensatory award is not final. It is
13   subject to change depending on whether Wasserman is found to have owned or used
14   other infringing domain names or websites, which again is a contested issue that the
15   Court has yet to resolve.[3]

16   The 2025 Order also states: "Plaintiffs are awarded their reasonable attorney's
17   fees and costs in bringing the Motion for Contempt, with *specific amounts to be*
18   *determined after* Defendant has fully complied with the 2019 Order and paragraphs
19   1-4 of this Order. (Docket No. 75 at 15.) There again is nothing final and appealable
20   about this portion of the 2025 Order. In *Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th
21   Cir. 1996), the Ninth Circuit dismissed an appeal challenging the award of attorney's
22   fees and costs for lack of jurisdiction, noting:

23

24   _____
25   [3] Under Wasserman's view, any time the Court were to change the amount of a
     compensatory award based on new evidence, Wasserman could appeal that decision.
26   This would defeat the purpose of the final-judgment rule, which posits that there
     should be a single appeal in every civil case that resolves all disputed issues. *See*
27   *Garraway v. Ciufo*, 113 F.4th 1210, 1215 (9th Cir. 2024).

28                                                    Pls' Opp'n to Def's *Ex Parte*
                                                     Appl. to Stay Enforcement of
                                                     2025 Order Pending Appeal
                              - 5 -                   No. 2:18-CV-428-JFW-MAR

1
2
3
4
5
6
7
8
9
10

> Here, . . . significantly more than a ministerial task remained after the district court entered its February 6 order stating it would award attorney fees and costs to Applause. The amount of fees and costs had yet to be determined. The court had requested further submissions from both parties in order to assist it in this determination. Kennedy *could not be said to have reasonably confused the Court's February 6 order with a final judgment when the amount of attorney fees and costs was undetermined and the court was still requesting submissions*.

11  *Id.* at 1483; *see also United States v. Allahyari*, 99 F.4th 486, 493 (9th Cir. 2024)

12  (applying *Kennedy* to different non-final order).

13       The same is true here. The Court's finding in the 2025 Order of Sub-Zero's

14  entitlement to attorney's fees and costs alone is not sufficiently final to warrant

15  interlocutory appeal.

16       Finally, Wasserman was fully aware that the Court had not fully disposed of

17  the contempt proceeding when he filed his notice of appeal on April 11, 2025. A

18  week earlier, on April 4, 2025, the parties conducted a meet and confer under L.R. 7-

19  18 regarding Sub-Zero's intention to file a second contempt motion, based on

20  Wasserman's ongoing violations of the 2019 Order and the 2025 Order. (Docket No.

21  94.) During that meet and confer, Wasserman did not even hint that he intended to

22  file a notice of appeal. *See id.* Thus, Wasserman's notice of appeal is tactical in

23  nature; he seeks to put the Court's contempt proceeding on ice for more than a year

24  so that he can continue to violate the Court's Orders and to defraud Sub-Zero's

25  customers with impunity.

26
27
28

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

As the Ninth Circuit has noted:

> Here, the policy considerations that favor denying immediate review are present. The civil sanctions that were imposed are part of an ongoing litigation in which the defendants have refused to comply with the district court's orders. If defendants' past course of conduct is any indication, additional future sanctions are likely. "To be effective, judicial administration must not be leaden-footed." *Cobbledick v. United States,* 309 U.S. 323, 325 (1940). A case's "momentum [should not] be arrested by permitting separate reviews." *Id.* Recognizing interlocutory jurisdiction here would run afoul of these considerations.

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,* 539 F.3d 1039, 1045 (9th Cir. 2008) (simplified).

These same policy considerations apply here. The notice of appeal did not divest the Court of jurisdiction over this ongoing contempt proceeding and, as discussed below, Wasserman has offered no valid basis to stay this proceeding.

### III.   WASSERMAN'S REQUEST TO STAY ENFORCEMENT OF THE 2025 ORDER AND THIS CONTEMPT PROCEEDING SHOULD BE DENIED.

Wasserman's *ex parte* application to stay the Court's enforcement of the 2025 Order and this contempt proceeding pending appeal fails to meet the legal standard for obtaining a stay.

### A.   Likelihood Of Success

Wasserman's discussion of likelihood of success is limited to three cursory arguments. First, Wasserman questions whether the Court retained jurisdiction to enforce the 2019 Order six years after it was entered. *Ex Parte* Appl. at 20. But, as

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

the Court repeatedly explained, a federal court always retains jurisdiction to enforce its own orders, and it expressly did so in the 2019 Order. *See* Docket No. 75 at 3-4, Docket No. 92 at 2-5. Thus, Wasserman has no chance of prevailing on this argument on appeal.

Second, ignoring the fact that Wasserman's counsel: (a) entered an appearance on December 27, 2024 (Docket Nos. 42, 43); (b) received Sub-Zero's January 28, 2025 contempt motion (Docket No. 55) through the Court's ECF filing system; and (c) opposed that contempt motion, *with a supporting declaration from Wasserman* (Docket Nos. 68, 68-1), Wasserman contends that Sub-Zero's failure to personally serve him with the contempt motion—*at some undisclosed location in Mexico*[4]— violated California law. *Ex Parte* Appl. at 21. Again, the Court has rejected this argument repeatedly, and it does not raise a serious question. Docket No. 75 at  4; Docket No. 92 at 5-7 (noting Wasserman's discussion of Rule 4.1 relies on wrong rule).

Third, as the Court has explained (Docket No. 92 at 7-9), Wasserman seriously misreads the Supreme Court's decision in *Dewberry* when he argues that it has relevance to this case. *Ex Parte* Appl. at  22-23.

In sum, Wasserman has completely failed to show *any* likelihood of success on appeal. This alone is reason to deny his request to stay enforcement of the 2025 Order or this contempt proceeding.

**B.    Irreparable Harm**

Wasserman asserts: "Without the requested stay, Mr. Wasserman will be required to participate in the Plaintiffs' 'renewed motion for contempt" and any future contempt motions that Plaintiffs are likely to file during the pendency of Mr. Wasserman's appeal." *Ex Parte* Appl. at 14. Setting aside the fact that Sub-Zero

---

[4] Docket No. 68-1 at 4 (¶ 16); Docket No. 53 at 6-7 (¶ 22).

Pls' Opp'n to Def's *Ex Parte*
Appl. to Stay Enforcement of
2025 Order Pending Appeal
No. 2:18-CV-428-JFW-MAR

would have no reason to file "future contempt motions" if Wasserman would simply stop violating the Court's 2019 and 2025 Orders, the Ninth Circuit has rejected Wasserman's litigation costs argument. *In re Marino*, 949 F.3d 483, 488 (9th Cir. 2020) ("[l]itigation costs generally do not qualify as irreparable harm."); *see also Monaco v. Bear Stearns Cos., Inc.*, 2012 WL 12506860, at *4 (C.D. Cal. Dec. 5, 2012) ("litigation costs in and themselves generally do not constitute irreparable injury").

Wasserman cites only inapposite and abrogated authority for the proposition in support of his litigation costs argument. *Ex Parte* Appl. at 15. In *Hunt v. Check Recovery Sys.*, 2008 WL 2468473, at *3 (N.D. Cal. June 17, 2008), the court found irreparable harm where the case was still subject to discovery and trial, unlike here, where Sub-Zero is merely attempting to enforce compliance with the Court's judgment and contempt order. In *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011), *abrogated by Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the court expressly rejected Miller's claim that litigation costs constitute irreparable injury. *Id.* Notably, when the Supreme Court abrogated that court's decision, it acknowledged courts' general rejection of litigation costs as a recognized type of irreparable harm.

Moreover, during the parties' April 18, 2025 L.R. 7-18 meet and confer call, Wasserman's counsel stated that they already were planning to file an Opposition to Sub-Zero's April 14 motion for contempt two days from now, on Monday, April 21, 2025. So, there are no material litigation costs that would be avoided by a stay of this action. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2020 WL 13654300, at *1 (N.D. Cal. June 18, 2020) (finding no irreparable harm where "[p]laintiffs have already filed their objections to Volkswagen's bill of costs, making it difficult to see what litigation expenses would be preserved by a stay.")

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

Wasserman's speculation about potential future contempt motions does not constitute irreparable harm either. *See Rum v. HCA Healthcare, Inc.*, 2023 WL 7107268, at *2 (C.D. Cal. Oct. 11, 2023) (Walter, J.) ("the threat of litigation, her credit, and finances are purely speculative and not sufficient to establish a likelihood of irreparable harm.")

In the absence of any showing of irreparable harm, Wasserman's *ex parte* application should be denied.

## C.    Balance Of Harms

The balance of harms (or hardships) also supports denial of Wasserman's *ex parte* application. Wasserman makes the remarkable assertion that:

> Plaintiffs, on the other hand, cannot show injury. Indeed, *they don't argue that they've suffered or are suffering injury due to the alleged noncompliance to the* [*2019 Order*]. Rather, they simply seek to enforce the [2019 Order] . . . and hold Mr. Wasserman in contempt for supposed non-compliance.

*Ex Parte* Appl. at 27.

Nothing could be further from the truth.

- Every time Wasserman uses the SUB-ZERO or WOLF word marks in a domain name or on a website, he is harming Sub-Zero's goodwill and diluting its reputation by creating a false impression in consumers' minds that the fake domain name or website belongs to, or is associated with, Sub-Zero.

- Every time Wasserman uses the name of one of Sub-Zero's Factory Certified Service providers (BOX, SEASONAL, WILSHIRE) in a domain name or on a

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

website, he is harming Sub-Zero's goodwill and reputation by creating a false impression in customers' minds that the imposter repair company is one that Sub-Zero has certified to fix their appliances.

- Every time one of Wasserman's fake repair people (who he "sells" leads to, but whose identify he never discloses) goes out and defrauds a Sub-Zero customer, that directly impacts Sub-Zero's goodwill and reputation with that customer.

- The reason Sub-Zero and its Factory Certified Service providers filed numerous UDRP actions against Wasserman and his associates, to no avail, was to try and stop his registration and use of infringing domain names and imposter websites.

The whole point of Wasserman's fraudulent enterprise—dating back to 2010, when he registered the <subzerorepairservice.us> domain name (Docket No. 74 at 2)—is, and has always been, about trading unlawfully on Sub-Zero's name, reputation, the quality of its products, and the goodwill it has created with its customers.

Moreover, the Court already has ruled that Wasserman's actions have injured Sub-Zero reputation and goodwill, as reflected in its assessment of compensatory damages. *See* Docket No. 75 at 13 (citing *Mercedes-Benz Group AG v. A-Z Wheels LLC*, 2022 WL 2276907, at *3-4 (S.D. Cal. June 23, 2022)).

The balance of harms strongly favors denial of Wasserman's *ex parte* application.

### D. Public Interest

It is not clear how Wasserman can argue with a straight face that the public interest would be advanced by staying enforcement of the 2025 Order or this

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

1   contempt proceeding. *Ex Parte* Appl. at 27. Wasserman alludes to the cost of
2   litigation or the administrative burden on courts, but the primary public interest is to
3   protect Sub-Zero, its Factory Certified Service providers and, most importantly,
4   Sub-Zero's customers (the general public) from Wasserman's ongoing attempts to
5   defraud them. As explained in detail in Sub-Zero's contempt motion, and in the
6   Court's 2025 Order, it is undisputed that Wasserman and his associates registered
7   and used infringing domain names to trick Sub-Zero customers to use imposter
8   repair companies, who stole the customers' deposits, overcharged them, or
9   threatened them with legal action if they failed to pay fraudulent invoices. *See*
10  Docket No. 55-1 at 18-21 (detailing customer complaints and scale of Wasserman's
11  fraudulent enterprise); Docket Nos. 60-63 (Sub-Zero customer declarations).

12      As further detailed in Sub-Zero's renewed contempt motion (Docket No. 99
13  at 6-14), Wasserman continues to flout the 2019 and 2025 Orders. The public interest
14  would be disserved by a stay of enforcement of the 2025 Order.

15      In sum, based on a consideration of the injunction factors, Wasserman's *ex
16  parte* application should be denied.

17  **IV.  IN ANY EVENT, WASSERMAN CANNOT OBTAIN STAY THE ENFORCEMENT
18       OF THE 2025 ORDER WITHOUT POSTING A $3,165,000 BOND.**

19      As explained in *Rivas v. Knight Transp. Inc*., 2017 WL 3457113 (C.D. Cal.
20  Feb. 28, 2017),

21          [u]nder Rule 62(d), "[i]f an appeal is taken, the appellant
22          may obtain a stay by supersedeas bond . . . ." Such bond
23          "may be given upon or after filing the notice of appeal or
24          after obtaining the order allowing the appeal" and the stay
25          "takes effect when the court approves the bond." "*Because
26          the stay operates for the appellant's benefit and deprives
27          the appellee of the immediate benefits of his judgment, a*

28                                                    Pls' Opp'n to Def's *Ex Parte*
                        - 12 -                        Appl. to Stay Enforcement of
                                                      2025 Order Pending Appeal
                                                      No. 2:18-CV-428-JFW-MAR

*full supersedeas bond should be the requirement in normal circumstances*[.]" *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980); *see also Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 5921932, at *2 (C.D. Cal. Feb. 1, 2016) ("Generally, 'the amount of the bond should be sufficient to pay the judgment plus interest, costs and any other relief (e.g. attorney fees) the appellate court may award.'" (citation omitted)).

*Id.* at *1.

Even if Wasserman could meet the legal standard for a stay (which he has failed to do), he still is not entitled to a stay unless he posts a full supersedeas bond in the amount of $3,165,000, calculated as follows:

| FULL SUPERSEDEAS BOND | | |
|---|---|---|
| 2025 Order | Calculation | Amount |
| $5,000 daily fine starting on March 24, 2025 (Docket No. 75 at 14) | • Period up until notice of appeal: $5,000 x 18 days[5] = $90,000<br><br>• Period from notice of appeal until Ninth Circuit decision: $5,000 per day x 495 days[6] = $2,475,000 | $2,565,000 |

---

[5] The period from March 24, 2025 to the date of the filing of the notice of appeal (April 11, 2025) is 18 days.

[6] According to the Ninth Circuit, in civil cases, it takes "approximately 6-12 months" from the filing of the notice of appeal to oral argument, and "within 3 months to a year" from oral argument to the time of decision. *See* https://www.ca9.uscourts.gov/general/faq/#:~:text=For%20a%20civil%20appeal%2C%20approximately,months%20after%20briefing%20is%20complete. Taking the midpoint of these time periods and adding them together leads to an average time

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

| $50,000 per each of 12 infringing domain names, plus other infringing domain names to be identified by Wasserman (Docket No. 75 at 15) | $50,000 x 12 = $600,000 | $600,000 |
|---|---|---|
| Sub-Zero's reasonable attorney's fees and costs (Docket No. 75 at 15.) | Not quantified yet | --- |
| Total: | | $3,165,000 |

This $3,165,000 supersedeas bond figure is conservative in two respects. First, it does not account for the eight (8) additional infringing domain names referenced in Sub-Zero's April 11, 2025 renewed contempt motion (Docket No. 99), which would add *$400,000* to the $600,000 figure itemized above. Second, because the issue of attorney's fees and costs has not yet been briefed, Sub-Zero has assigned no dollar figure to that category of costs. That alone results in a deduction of hundreds of thousands of dollars from the bond amount.

In his *ex parte* application, Wasserman identifies no factual basis for obtaining a stay of enforcement of the 2025 Order without securing a full supersedeas bond. Wasserman does not submit a declaration introducing into evidence any facts that would support a lower bond amount. *See* Rivas, 2017 WL 3457113, at *1. Wasserman cites a single case, *Walczak v. ELP Prolong, Inc.*, 198 F.3d 725, 734 (9th Cir. 1999), for the proposition that a court may set the security bond at a level below the full bond amount (Ex Parte App. at 24), but in *Walczak*, the parties disputed what

---

from notice of appeal to decision of sixteen and a half (16½) months, which is 495 days (at 30 days per month).

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

1    the potential financial ramifications of the preliminary injunction would be,

2    submitted competing declarations from an economist and an attorney/board member

3    to address the issue of how large a bond was needed to cover the potential business

4    harm, and the district court credited one declarant's view in setting the amount of the

5    bond, which was affirmed. *Walczak*, 198 F.3d at 733-34.

6         By contrast, here, there is no dispute about the amount of the bond, or how it

7    should be calculated, as itemized above. Moreover, Sub-Zero has no ability to avoid

8    the injury that Wasserman is inflicting on Sub-Zero, its service providers and its

9    customers, unless Wasserman complies with the contempt order. In another case

10   Wasserman cites, *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir.

11   2005), the Ninth Circuit credited the relative hardships of the movant which involved

12   "a dramatic impact on the nature of the development and its effect on the waters of

13   the United States and the animal and plant life." *Save Our Sonoran, Inc. v. Flowers*,

14   227 F. Supp. 2d 1111, 1115 (D. Ariz. 2002). Wasserman has asserted no such

15   hardship here.

16        Wasserman's authority in support of his argument that no bond should be

17   required involved situations where the nonmovant did not provide evidence of harm

18   or request that the court set a bond. *See*, *e.g.*, *Connecticut Gen. Life Ins. Co. v. New

19   Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). However, as discussed

20   above, Sub-Zero continues to be harmed by Wasserman's continuing fraud.

21        Moreover, the bond amount set in other cases is irrelevant because none of

22   those cases involve a defendant, like Wasserman, who:

23            (a)    has been convicted of directing a $11 million

24                   criminal fraud ring, which used four *front*

25                   companies to defraud 650 customers (Docket No.

26                   75 at 11);

27

28

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

      (b)     purports to live in Mexico but will not disclose his address (Docket No. 68-1 at 4 (¶ 16); Docket No. 53 at 6-7 (¶ 22) (Wasserman's counsel would not answer Sub-Zero's counsel's questions about what Wasserman's permanent address is, or whether he has addresses in the United States));

      (c)     knowingly transferred an infringing domain name to an associate in Ukraine to conceal Wasserman's involvement, but still controlled the website and was able to change its content after the transfer (Docket No. 74 at 2);

      (d)     registered an infringing domain name five days after he certified under oath his compliance with the 2019 Order (*id*.); and

      (e)     claims he only "buys and sells leads," but then registered to do business in California as "*Real* Box Appliance" and "Wilshire-Refrigeration" to impersonate those Sub-Zero repair companies (Docket No. 55-1 at 14-15, 17-18).

The list goes on and on.

     Ordering Wasserman to secure a bond in anything less than $3,165,000 would give him license to continue to infringe on Sub-Zero's rights and to defraud its customers during the period of the appeal.

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR

## CONCLUSION

For the reasons stated, Wasserman's *ex parte* application to stay enforcement of the 2025 Order and this contempt proceeding pending appeal should be denied.

Dated: April 19, 2025                    Respectfully submitted,

                                         FOLEY & LARDNER LLP

                                         /s/ *Ashley M. Koley*
                                         Ashley M. Koley
                                         akoley@foley.com

                                         Attorney for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs hereby certifies that this brief contains 4,425 words, including text and footnotes, as counted using a Microsoft Word word-count feature, which:

     **X**   complies with the word limit of Local Rule 11-6.1; and

     **X**   complies with the 25-page limit set in the Court's December 23, 2024 Order (Docket No. 38).

                                         /s/ *Ashley M. Koley*
                                         Ashley M. Koley
                                         akoley@foley.com
                                         *Attorney for Plaintiffs*

Pls' Opp'n to Def's *Ex Parte* Appl. to Stay Enforcement of 2025 Order Pending Appeal No. 2:18-CV-428-JFW-MAR